IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK FRALEY,

           Plaintiff,

v.                                                    Case No. 16-3143-JWB

KAYLA TRANBARGER, et al.,

           Defendants.

**MEMORANDUM AND ORDER**

This case comes before the court on Defendants' motion for summary judgment. (Doc. 100.) The motion has been fully briefed and is ripe for decision. (Docs. 101, 121, 122, 123.) Defendants' motion is GRANTED for the reasons stated herein.

**I.    Procedural History**

On August 1, 2018, Defendants moved for summary judgment. (Doc. 100.) As required by Local Rule 56.1(f), Defendants provided Plaintiff, who is proceeding pro se, with the required notice regarding motions for summary judgment. (Doc. 102.) The notice was mailed to Plaintiff's address of record. (Doc. 102.) Plaintiff's original response deadline was August 22, 2018. Plaintiff timely filed a motion for an extension. (Doc. 105.) The court granted the extension and granted three additional extensions of time. (Docs. 111, 114, 119.) Plaintiff's deadline to file his response was December 21, 2018. Plaintiff failed to file a response by that date. On January 3, Plaintiff filed a motion for excusable neglect and filed his response to the motion. (Docs. 121, 122.) Plaintiff contends that he missed the deadline due to his legal material being lost or taken

1

during his transfer to a different facility.[1] (Doc. 121.) Defendants oppose Plaintiff's motion. (Doc. 123.)

The court notes at the outset that Plaintiff has been informed on more than one occasion that he is at a facility that has mandatory electronic court filing for prisoner's cases, yet Plaintiff continues to mail his pleadings in to the clerk's office.[2] Plaintiff fails to give any reason why he could not have timely moved for an extension of time after the alleged theft of his materials. The court could deny an extension on that basis. Nevertheless, the court will grant Plaintiff's motion as Plaintiff has attested that his materials were lost or stolen and the court has no reason to dispute Plaintiff's representations.

Plaintiff's response, however, fails to comply with Local Rule 56.1(f) as Plaintiff has not set forth a response to Defendants' statement of facts nor has Plaintiff set forth his own statement of facts. Plaintiff has submitted an affidavit in support of his motion for excusable neglect in which he attempts to controvert some of Defendants' facts in support of its motion for summary judgment. (Doc. 121.) Plaintiff has also submitted exhibits in his response. (Doc. 122.) The court has no obligation to search Plaintiff's exhibits for facts that are not set forth in a statement of facts. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("The court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record.") The court will review the facts asserted in Plaintiff's affidavit in determining the uncontroverted facts and whether Plaintiff has shown a dispute of material fact in this case. The court will not review the exhibits attached to Plaintiff's response

---

[1] Plaintiff does not identify any specific official who he believes stole his property but merely refers to these officials as "KDOC officials." (Doc. 121, Exh. 1.) The named Defendants in this action are all medical personnel at various facilities and Plaintiff does not assert that a named Defendant confiscated his materials.

[2] Upon filing this action, the clerk's office instructed Plaintiff of this requirement and has reminded Plaintiff of this requirement during the pendency of this action. *See* Docket Annotation 11/28/2018.

for additional facts beyond those contained in Plaintiff's affidavit. *Id.* Any statement of fact that has not been controverted by Plaintiff's affidavit is deemed to be admitted. D. Kan. Rule 7.4. Also, the court will only consider facts based on personal knowledge or supported by the exhibits to the extent Plaintiff has cited an exhibit in his affidavit. Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Plaintiff also asserts that this court should grant him relief under Rule 56(f) and allow more time for discovery. To provide the relief requested, Plaintiff must

> file an affidavit that explains why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts. A party may not invoke Rule 56(f) by simply stating that discovery is incomplete but must state with specificity how the additional material will rebut the summary judgment motion.

*Libertarian Party of NM v. Herrera*, 506 F.3d 1303, 1308–09 (10th Cir. 2007) (internal citations omitted.

Plaintiff has failed to meet the specificity requirement as he has not provided an affidavit identifying facts that are not available and would rebut the motion for summary judgment before the court. Therefore, Plaintiff's request for additional discovery under Rule 56(f) is denied.

## II. Uncontroverted Facts[3]

In July 2014, Plaintiff was confined at Larned Correctional Mental Facility ("Larned"). As a confined prisoner, Plaintiff could receive medical care upon request. Prisoners who request medical evaluation and/or treatment for non-urgent conditions will not be assessed unless they submit a Health Services Request ("HSR") form and they are then assessed a fee of $2.00. (Docs. 96 at 2; 101 at 2-3.)

---

[3] The facts are taken largely from the stipulated facts in the pretrial order and Defendants' uncontroverted facts. In the event a fact is disputed, the court will so note.

Defendant Michele Kennedy (formerly Sterns) was working as a nurse on the evening of July 4, 2014. Kennedy does not recall seeing Plaintiff on that date. The medical records do not show that Plaintiff was seen by Kennedy on July 4. Plaintiff has submitted affidavits stating that his dental bridge was broken off after he was punched on July 4, 2014. An affidavit by Archie Dooley states that Plaintiff was assisted to the medical clinic by an unknown guard. (Doc. 122 at 2.) Kennedy has submitted an affidavit regarding her practices and what actions she would have taken had Plaintiff presented with particular symptoms on July 4. (Doc. 101, Exh. 10.) If Kennedy saw Plaintiff on July 4 and determined that his condition required urgent attention, she would not have required the submission of an HSR and she would have called the dentist or a higher-level provider and noted the same in the medical records. Also, if Plaintiff had presented with significant active bleeding or he was in significant distress, Kennedy would have assessed Plaintiff without requiring an HSR and would have entered a progress note regarding treatment. If Kennedy had determined that Plaintiff's condition was not urgent, then she would have required the submission of an HSR so that she could proceed with an examination.[4] If Plaintiff had declined to submit an HSR, which was common due to prisoners not wanting to incur a fee, Kennedy would have had Plaintiff fill out a Refusal of Treatment form. There is no record of a Refusal of Treatment or any progress notes regarding July 4.[5] (Docs. 96 at 2-3; 101 at 2-4.)

Plaintiff submitted an HSR regarding his teeth on July 6, 2014. He stated as follows: "The recent loss of my top front cantilever bridge is drastically affecting my daily life in that I can hardly eat a thing, and now spit flies out when I engage in speaking with others." Kennedy reviewed the

---

[4] Consistent with this statement from Kennedy's affidavit, the affidavit submitted by Archie Dooley states that Plaintiff told him that the nurse instructed him to submit a sick call request for services. (Doc. 122 at 2.)

[5] In his affidavit, Plaintiff argues that the absence of a treatment note creates a genuine dispute of material fact. (Doc. 121, Exh. 1 at 2-3.) Plaintiff, however, has not controverted the facts set forth in Kennedy's affidavit. The absence of a record, in and of itself, does not create an issue of fact in this case.

HSR on July 6 at 11:30 p.m. Kennedy determined that Plaintiff should be seen by the nurse and placed his name on the sick call list. Because Plaintiff's HSR did not describe an urgent condition, Kennedy determined that he did not need to be seen on an urgent basis. (Doc. 101 at 4.)

On July 7, Fraley saw Defendant Erica Brown, RN. Plaintiff was assessed a $2.00 fee for his visit with Brown. Brown's progress notes state that Plaintiff's "top bridge fell out while eating popcorn and accidently chewed a kernel and popped his bridge." (Doc. 101, Exh. 1 at 64.) Brown noted that there was "no swelling or redness" and that Plaintiff had "alterations in comfort due to Dental Pain." (*Id.*) Dislodgement of a bridge does not mean that a patient will necessarily experience pain. Brown recommended that Plaintiff alternatively apply a warm wash cloth and ice pack to the area and use warm salt water rinses. Brown instructed Plaintiff to return to the clinic if he later developed swelling in his face, jaw, or neck. Plaintiff informed Brown that he was scared to eat with other inmates and wanted an excused absence from work because he felt weak. Brown encouraged Plaintiff to eat and go to work but instructed him to speak to his unit leader if he had further concerns about going to work. Brown did not assess Plaintiff to be experiencing any significant pain. Brown did not seek an assessment for Plaintiff from a higher-level provider because she did not find it to be medically indicated. Brown did not contact Defendant Kayla Tranbarger or Defendant Diane Haines regarding Plaintiff's dental conditions. Brown's recommendations were those recommended by established nursing protocols. Brown did not prescribe Tylenol because Plaintiff was already taking Tylenol. Brown referred Plaintiff to the dental clinic on a non-urgent basis and delivered a copy of the July 6, 2014, HSR to the dental clinic. (Doc. 101 at 5-7.)

During July 7 to 11, Plaintiff claims that he showed certain medical staff, who were working on the "med line," his dental condition and made complaints of dental pain. Staff

members who work on the med line pass medication to prisoners who are not allowed to keep their medications on their person. Plaintiff failed to identify any individuals to whom he made complaints.[6] The following Defendants could have been present at the med lines during July 7 to July 11: Erica Brown, Michele Kennedy (Sterns), Patricia Amaya, Amanda Mead (Auble), Pam Barker, Samantha Brox, Kathy Crosswhite, Susan Mathes, Deb McAlister, Donalda Parker, Tina DiMarzo (Stanley), and Jeanne Young. None of these Defendants recall an encounter with Plaintiff at the med line during July 7 to 11, 2014. The medical records do not reflect that Plaintiff complained of dental pain at the med line. Moreover, Plaintiff did not need to use the med line for his prescriptions as all of his prescriptions, including Tylenol, where "KOP" or "keep on person" and Plaintiff was allowed to self-medicate. The medical records do not indicate that Plaintiff was provided mediation during this time period nor do they indicate that any of these Defendants, other than Brown, had an encounter with Plaintiff. All Defendants who could have been on the med line submitted affidavits setting forth their routine practices. If Plaintiff would have presented in an urgent condition, or was in significant distress, the med line Defendants would have acted to address Plaintiff's condition. Had Plaintiff complained but did not have an urgent condition or was not in significant distress, Defendants would have instructed Plaintiff to submit an HSR regarding his condition. (Doc. 101 at 8-10.)

Fraley had been scheduled to see Defendant Sean Fay, DDS, on July 14. Plaintiff, however, was placed in segregation on July 11. On July 11, Defendant Donalda Parker, RN, met with

---

[6] In his affidavit, Plaintiff contends that the affidavits by Defendants are "legal hyperbole" and that Defendants have failed to identify who worked at the window on July 7. Plaintiff contends that this individual informed him that Tranbarger was aware of the situation. (Doc. 121, Exh. 1 at 2.) Plaintiff has not disputed Defendants' affidavits regarding this time period. Moreover, Plaintiff has not identified who made this statement or controverted Defendants' facts regarding their treatment practices. Plaintiff has submitted affidavits by Dooley and Oscar Garza. (Doc. 122, Exh. E and F.) These affidavits state that Plaintiff made complaints on the med line but do not indicate who was told or what those individuals stated in response to Plaintiff. Therefore, they do not contradict the facts set forth by Defendants.

6

Plaintiff and cleared him to be placed in segregation. Parker did not note any dental complaints by Plaintiff. While Plaintiff was in segregation, he could not self-medicate and was given medications by several staff members, including Amaya, DiMarzo and Crosswhite. None of these Defendants recall complaints of dental pain or signs of distress. If this had occurred, Defendants would have noted it in the medical records. On July 14, Fraley was seen in segregation by Elona Revers, LCPC, for a behavioral health visit. She noted his mood and affect were good and he had no mental health concerns. The medical record does not indicate that Plaintiff expressed any dental complaint. (Doc. 101 at 11-13.)

Plaintiff was not taken to his appointment with Dr. Fay on July 14. Dr. Fay entered a progress note on July 14, which noted that Plaintiff had been transferred to the central unit and his appointment would need to be rescheduled. The next dental clinic when Dr. Fay could see Plaintiff was on July 21. After a review of the medical records, Dr. Fay stated that Plaintiff's dental condition did not require the staff to contact him on an urgent basis. Plaintiff did not have an urgent dental condition and it was appropriate to schedule Plaintiff on the regular clinic schedule. (Doc. 101 at 12-13.)

On July 17, Plaintiff was transferred from Larned to Hutchinson Correctional Institution ("HCI"). Plaintiff was seen at HCI for an intake interview. Plaintiff was then transferred to Winfield Correction Institution ("Winfield") on July 21. On July 21, Plaintiff was seen by Defendant Reginna Strobel, RN. Strobel noted Plaintiff's broken dental bridge and referred Plaintiff to the dentist. On July 22, Plaintiff was seen by Defendant Rodger Maechtlen, DDS. Plaintiff informed Dr. Maechtlen that his implant was broken. Dr. Maechtlen performed x-rays, which showed that Plaintiff did not have a previous root canal or implant. Dr. Maechtlen noted that a bridge was detached between teeth numbers 7 and 9 and only the roots of those teeth

7

remained. Dr. Maechtlen recommended extracting teeth numbers 7 and 9 and the preparation of a partial denture, after the extractions had time to heal. Dr. Maechtlen also noted that an alveolar procedure, which involves removing bone from the mouth, might be required in order to complete the partial denture. The partial denture was not a permanent prosthesis but would be removable and would have improved appearance and chewing. (Doc. 101 at 14.)

Plaintiff informed Dr. Maechtlen that he wanted a fixed prosthesis or his bridge reattached. Dr. Maechtlen explained he could not reattach the bridge because there was insufficient crown remaining on teeth numbers 7 and 9. With respect to a fixed prosthesis, the standard of care did not require this treatment which necessitates extensive restorative procedures that are not authorized in the prison because they are considered cosmetic.[7] Dr. Maechtlen informed Plaintiff that his recommendations of extraction and bone removal could limit later options for cosmetic procedures if Plaintiff wanted to pursue those after his release. Plaintiff was informed that the treatment could be performed at a later date and that Plaintiff should let the dental department know if he wanted to move forward with treatment. Plaintiff left his visit with Dr. Maechtlen without accepting or rejecting his recommendations. No future appointment was made. Dr. Maechtlen determined that it was reasonable for Plaintiff to reject or defer his decision due to the fact that Plaintiff had reported that he was not in pain and Dr. Maechtlen did not observe any caries. (Doc. 101 at 14-15.)

On July 28, Plaintiff was seen by Rita Gumm, APRN, for a gastrointestinal complaint. The medical record does not indicate that Plaintiff made a dental complaint. On October 6, Plaintiff submitted a grievance and complained about his lack of dental treatment. Plaintiff claimed that he

---

[7] In his affidavit, Plaintiff contends that KDOC's policy regarding limitations on cosmetic procedures is a violation of his Eighth Amendment rights. (Doc. 121, Exh. 1 at 4-5.) Plaintiff, however, does not contradict the medical opinions of Dr. Maechtlen that Plaintiff's treatment recommendations were within the standard of care nor does Plaintiff contend that a named Defendant is responsible for the policy regarding extensive restorative procedures.

8

had not eaten in three months and had substantial pain. He indicated that he objected to Dr. Maechtlen's recommendations and that Dr. Maechtlen should provide root canals and posts to reattach his bridge. Plaintiff requested a second opinion by an outside dentist. (Doc. 101 at 15-16.)

Plaintiff's grievance was reviewed by Strobel. Strobel determined that the medical records did not indicate that Plaintiff filed any HSRs at Winfield regarding his dental care. Additionally, Strobel determined that Plaintiff's recorded weights did not show a significant weight loss. Strobel spoke with Dr. Maechtlen who explained his recommendations and confirmed that Plaintiff's condition does not interfere with eating. Strobel met with Plaintiff on October 9. During that meeting, Plaintiff continued to claim that he was entitled to the restorative dental services that he desired. Strobel did not observe any evidence of weight loss or pain during her visit with Plaintiff. Strobel provided a written response to Plaintiff's grievance stating that Plaintiff had been provided with treatment options and had not accepted treatment. Additionally, Strobel stated that she would request that Plaintiff be provided with more Tylenol for his use and that he should submit a medical request for alternative pain medication if that was not sufficient. (Doc. 101 at 16-17.)

On October 18, Plaintiff submitted a HSR requesting extraction of his two teeth. Additionally, he stated that he was in severe pain and the treatment had been "mandated" in July. Plaintiff was referred to the dentist. On October 21, Plaintiff signed a consent form and Dr. Maechtlen extracted teeth numbers 7 and 9. The record reflects that Plaintiff declined other treatment. Dr. Maechtlen prescribed ibuprofen for 5 days. On October 28, Plaintiff complained about dental pain in tooth number 10 and was seen by a member of the nursing staff. Tylenol was not helping with his pain. After consultation with Dr. Maechtlen, Plaintiff was prescribed ibuprofen through October 30. (Docs. 96 at 5; 101 at 17-18.)

On October 30, Plaintiff was seen by Dr. Maechtlen. The medical records show that the filling and most of the porcelain crown was missing from tooth number 6. Tooth 11 also had partial loss of the porcelain crown, which exposed a metal post. Dr. Maechtlen provided a filling for tooth number 6. A follow up appointment was needed to address tooth number 11 as a composite crown was required. On December 4, Dr. Maechtlen placed a composite crown on tooth number 11. Dr. Maechtlen noted the absence of dental decay or deterioration on the tooth. After placing the crown, Dr. Maechtlen instructed Plaintiff to be careful while chewing. (Docs. 96 at 5-6; 101 at 18.)

Between July 4, 2014, and December 4, 2014, Plaintiff submitted two HSRs concerning his dental condition: one on July 6, 2014, and the other on October 18, 2014. Plaintiff did not submit an HSR regarding dental complaints from December 4, 2014, to July 1, 2016, the time of filing this complaint. Plaintiff's sole grievance regarding this issue was submitted on October 8, 2014.[8]

Plaintiff filed this action against Defendants asserting that they have violated his Eighth Amendment right to be free from cruel and unusual punishment in that they have been deliberately indifferent to his medical needs. Defendants move for summary judgment on the basis that Plaintiff has failed to establish that they were deliberately indifferent to his medical needs.

### III.  Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's

---

[8] Although the pretrial order raises the issue of exhaustion, Defendants have not asserted failure to exhaust as a basis for judgment.

10

favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

**IV. Analysis**

Plaintiff filed this action on July 1, 2016, asserting a claim pursuant to 42 U.S.C. § 1983, in addition to several other federal and state claims which have since been dismissed by the court or eliminated after the entry of the pretrial order. (Docs. 14, 28, 96.) Plaintiff's remaining claim contends that Defendants violated his Eighth Amendment right to be protected from cruel and unusual punishment by being deliberately indifferent to his medical needs. Plaintiff contends that Defendants failed to treat his dental condition as an emergency, that he suffered pain and that they refused to provide restorative dental procedures to repair his bridge. (Doc. 96 at 7-8.)

To prevail on a claim under § 1983, Plaintiff must show the deprivation of a right secured by the Constitution and laws of the United States committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is undisputed here that Defendants were acting under color of state law at all relevant times. Plaintiff's allegations contend that Defendants were deliberately indifferent to his serious medical needs concerning his treatment for his displaced bridge. Plaintiff contends Defendants failed to properly treat his condition.

A jail official violates the Eighth Amendment's prohibition against cruel and unusual punishment when the official exhibits deliberate indifference to an inmate's serious medical needs.

11

*Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). Deliberate indifference encompasses two components. *Id.* at 751 (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). First, there is an objective component, which requires proof that Plaintiff's medical need was sufficiently serious.

> We have said that a "medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) []. Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim. *See, e.g., Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997). Moreover, a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quotation omitted). The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

*Mata*, 427 F.3d at 751.

"[I]t is the harm claimed by the prisoner that must be sufficiently serious to satisfy the objective component, and not solely the symptoms presented at the time the prison employee has contact with the prisoner." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

The second part of the deliberate indifference test involves a subjective component. It requires Plaintiff to present evidence of each Defendant's culpable state of mind. *Mata*, 427 F.3d at 751 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

> The subjective component is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Mata*, 427 F.3d at 751 (citing *Estelle*, 429 U.S. at 104-105)). The subjective component "is akin to 'recklessness in the criminal law'" in which the person must consciously disregard a substantial

risk of serious harm. *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)).

Case authority recognizes at least two types of conduct as deliberate indifference. In the first, a medical professional may fail to treat an inmate's serious medical condition properly. But "the medical judgment of [a] physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim." *Mata*, 427 F.3d at 751; *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). A jail medical professional who exercises her considered medical judgment does not face liability under the subjective component "absent an extraordinary degree of neglect." *Self*, 439 F.3d at 1232. "So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Id.* at 1233.

A second type of conduct qualifying as deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment. *Sealock*, 218 F.3d at 1211. A medical professional will not ordinarily be liable for this type of indifference, because she is generally the person who provides the treatment. But if a medical professional knows that her role is to serve as a gatekeeper for other medical personnel capable of treating the condition, and if she delays or refuses to fulfill that gatekeeper role due to deliberate indifference, she may be liable for denying access to medical care. *Id.*; *Mata*, 427 F.3d at 751.

**A. Michele Kennedy**

Plaintiff contends that he was seen by a nurse on the evening of July 4. Although Kennedy does not recall the visit and there is no medical record of the same, Kennedy has stated that she

was at work on that date and would have called a higher-level provider if Plaintiff had an urgent condition that needed urgent treatment. Plaintiff has not provided any evidence that his condition on July 4 was a serious medical condition. Although Plaintiff has submitted affidavits that state that Plaintiff's lip was bleeding and his teeth had been knocked out, Plaintiff does not contend in the pretrial order that he was denied treatment for an injured lip. Moreover, the bridge dislodgement was not an urgent condition as shown by the uncontroverted facts. Both Dr. Fay and Dr. Maechtlen have testified that the treatment he received was appropriate.

Moreover, on July 6, Plaintiff submitted an HSR seeking treatment for his dislodged bridge but did not complain of pain. Plaintiff merely stated that he was having trouble eating and spit was flying out of his mouth. Kennedy reviewed the HSR on July 6 and placed Plaintiff's name on the sick call list for July 7. Kennedy did not find that Plaintiff had an urgent condition because he did not complain of pain. Moreover, Plaintiff had Tylenol on his person that he could take if he was in pain.

Finally, Plaintiff's claim against Kennedy can also be construed as a delay in providing treatment. To establish such a claim, Plaintiff must show that he suffered an injury due to the delay. *See Duran*, 663 F. App'x at 689 (A "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.") Plaintiff has not done so. Rather, the evidence shows that Plaintiff did not make any complaints of pain until October 2014, which was after Dr. Maechtlen recommended treatment and Plaintiff refused the same. Plaintiff ultimately received that treatment in October 2014 and has not set forth any evidence that a delay in treatment resulted in substantial harm to Plaintiff.

The court finds that Plaintiff has failed to introduce any evidence that would satisfy the objective component of the deliberate indifference test. Even if Plaintiff could show that his dental

condition was sufficiently serious, Plaintiff has failed to establish that Kennedy acted with deliberate indifference to his medical needs. There are no medical records showing that Kennedy saw Plaintiff on July 4 or refused to see Plaintiff on July 4. Upon reviewing Plaintiff's HSR of July 6, Kennedy placed Plaintiff's name on the sick call list and Plaintiff was seen on July 7.

The uncontroverted facts show that Plaintiff was treated for the dental condition of which he complained. When there is treatment consistent with symptoms presented, an "inference of deliberate indifference is unwarranted." *Self*, 439 F.3d at 1232-33. Moreover, Plaintiff is required to introduce evidence of Kennedy's culpable state of mind and he has failed to do so. *Mata*, 427 F.3d at 751. In light of the extensive medical record and prompt treatment in response to Plaintiff's HSR, the court finds that Kennedy was not deliberately indifferent to Plaintiff's medical needs.

**B. Erica Brown**

Brown saw Plaintiff in response to his HSR on July 7. Brown evaluated Plaintiff and recommended a salt water gargle, application of a warm washcloth and ice. These recommendations were in accordance with treatment protocols for minor dental discomfort. Brown did not see evidence of an urgent condition and placed Plaintiff on the list to be seen by the dentist. Plaintiff did not see Brown on another occasion nor is there any evidence that Brown had any involvement in any other treatment.

Again, the court finds that Plaintiff has not satisfied the objective component of his claim of deliberate indifference. Brown treated Plaintiff and scheduled him to be seen by the dentist. Plaintiff also cannot establish the subjective component. Brown treated Plaintiff's condition and the court does not second-guess Brown's judgment. *Mata*, 427 F.3d at 751; *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "So long as a medical professional provides a level of care consistent with the

symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Self*, 439 F.3d at 1233.

At no point did Brown deny Plaintiff medical attention. Moreover, Plaintiff has not established that Brown's recommended treatment resulted in substantial harm. The treatment was consistent with Plaintiff's symptoms. Therefore, Brown was not deliberately indifferent to Plaintiff's needs.

### C. Regina Strobel

Strobel saw Plaintiff for his initial assessment at Winfield on July 21. Strobel also responded to Plaintiff's October grievance. In the initial assessment, Strobel referred Plaintiff to Dr. Maechtlen, who Plaintiff saw the next day. With respect to the grievance, Strobel discussed with Plaintiff his objections to Dr. Maechtlen's recommendations. Strobel also reviewed the records to determine if Plaintiff's complaints of pain and being unable to eat were supported by the medical records. Strobel determined that they were not and told Plaintiff to submit an HSR seeking different pain medications or to elect dental treatment.

Again, the court finds that Plaintiff has failed to establish that the delay of medical treatment resulted in substantial harm. Although Plaintiff complained that he hadn't eaten for three months, the medical records do not support such an allegation as his weight did not reflect his complaints. Furthermore, Plaintiff declined the treatment recommendations of July 22. The recommendations were not mandatory as Dr. Maechtlen noted that Plaintiff could decline treatment should he desire a cosmetic approach after his release.

Finally, there is no evidence that Strobel acted with deliberate indifference. Strobel referred Plaintiff to Dr. Maechtlen upon seeing Plaintiff on July 21. In October, Strobel instructed Plaintiff to submit an HSR if he needed different pain medication or wanted treatment. Plaintiff

has failed to introduce any evidence that Strobel acted with a culpable state of mind. Strobel's role was to act as a gatekeeper for treatment and she did not deny Plaintiff access to medical care. *See Sealock*, 218 F.3d at 1211; *Mata*, 427 F.3d at 751.

**D. Rodger Maechtlen**

As discussed previously, Plaintiff's condition was not sufficiently serious to meet the object component as the recommended dental treatment was not mandatory and Plaintiff was treated by Defendants when he sought medical care. Even if Plaintiff's condition was sufficiently serious to meet the objective component, Plaintiff cannot establish that Dr. Maechtlen was deliberately indifferent to Plaintiff's medical needs.

The record shows that Dr. Maechtlen saw Plaintiff on July 22. Dr. Maechtlen performed an examination, noted the detached bridge and that only the roots of teeth numbers 7 and 9 remained. Dr. Maechtlen's recommendations of extracting teeth numbers 7 and 9 and the preparation of a partial denture were within the standard of care. Dr. Maechtlen could not reattach the bridge because there was insufficient crown on the teeth. He also could not provide a fixed prosthesis as that was considered an extensive restorative procedure and not authorized by prison policies. Plaintiff refused treatment at that time. Dr. Maechtlen noted that it was reasonable to refuse treatment as Plaintiff was not in pain and Plaintiff wanted to consider potential cosmetic procedures after his release. On October 18, Plaintiff submitted an HSR requesting the removal of the teeth. Dr. Maechtlen performed the removal on October 21 and provided Plaintiff with pain medication.

At no point did Dr. Maechtlen deny Plaintiff medical care. Plaintiff merely disagreed with Dr. Maechtlen's recommendations and desired a cosmetic prosthesis that was not required by the standard of care. Plaintiff has not established that Dr. Maechtlen acted with deliberate

17

indifference. "So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Self*, 439 F.3d at 1233. The uncontroverted facts do not show that Dr. Maechtlen "failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. The uncontroverted facts show that Plaintiff was treated for all medical conditions of which he complained.

### E. Med Line Defendants

Plaintiff contends in his complaint that he also approached and raised his dental complaints with various medical staff members who worked on the med line. As discussed previously, the court finds that Plaintiff's dental condition was not sufficiently serious to satisfy the objective prong of the deliberately indifferent standard for the reasons identified herein.

Plaintiff has also failed to show that Defendants working on the med line acted with the required mental state. To survive summary judgment, Plaintiff must present evidence of **each** Defendant's culpable state of mind. *Mata*, 427 F.3d at 751. Plaintiff has not identified the complaints he made to specific med line Defendants and their responses to the same. Plaintiff must show that each Defendant knew "of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Plaintiff has failed to show that these Defendants knew of a substantial risk of harm to Plaintiff and disregarded that risk.

Therefore, Plaintiff has failed to show that the med line Defendants acted with deliberate indifference.

**F. Supervisory Defendants**

The remaining Defendants, Tranbarger, Haines, and Dr. Fay[9], did not see Plaintiff regarding his dental complaints. These Defendants have supervisory roles. In order to state a claim against a supervisor, Plaintiff "must first show the supervisor's subordinates violated the constitution." *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). Because Plaintiff has not stated a constitutional violation against any Defendant, a supervisor cannot have any liability. *Id.* Therefore, these Defendants are also entitled to summary judgment.

**V. Conclusion**

Plaintiff has failed to show that any Defendant acted with deliberate indifference in violation of the Eighth Amendment. Plaintiff has also failed to show that any delay in treatment resulted in substantial harm. *See Duran v. Donaldson*, 663 F. App'x 684, 688–89 (10th Cir. 2016) (quoting *Martinez*, 563 F.3d at 1088). Therefore, Defendants' motion for summary judgment is granted. (Doc. 100.) Plaintiff's motion for excusable neglect is granted. (Doc. 121.) The clerk is instructed to enter judgment in favor of Defendants.

IT IS SO ORDERED this 7th day of February, 2019.

                                          __s/ John W. Broomes_____
                                          JOHN W. BROOMES
                                          UNITED STATES DISTRICT JUDGE

---

[9] Although Plaintiff was supposed to be seen by Dr. Fay, Plaintiff was not seen due to his placement in segregation. Dr. Fay noted the same in his records and that Plaintiff would be seen at a later date. Dr. Fay reviewed the records and determined that Plaintiff's condition was not urgent and that Plaintiff could be rescheduled for the next clinic date. Plaintiff has not asserted nor shown that this conduct supports a finding that Dr. Fay was deliberately indifferent to Plaintiff's needs. The court finds that the uncontroverted facts show that Dr. Fay was not deliberately indifferent as Plaintiff has not shown that he acted with a culpable state of mind.